IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Charles E. Carter, )<br>)<br>                  Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>)<br>Officer Barney Dozier, Clarendon )<br>County Sheriff's Department, Clarendon )<br>County Fire Department, )<br>)<br>                  Defendants. )<br>) | Civil Action No. 2:10-2812-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on the Defendant Clarendon County Fire Department's ("CCFD") motion for summary judgment [Doc. 17] pursuant to Federal Rule of Civil Procedure 56. The plaintiff contends that the CCFD defamed him by including in a Field Report a statement that implied that the plaintiff had operated a lawnmower indoors.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

This matter arises out of a dispute between the plaintiff and the plaintiff's tenant, Sharon Counts ("Counts"). On September 21, 2009, Firefighters from Defendant CCFD, were dispatched to Counts' residence at 2688 Hector Walker Road in Manning, South Carolina to investigate a possible carbon monoxide alarm. (Bozard Aff. ¶ 2; see also Hogue Aff. ¶ 2.) The CCFD Firefighters were met at the scene by officers from the Defendant Clarendon County Sheriff's Department ("Officers"). (Bozard Aff. ¶ 3; see also Hogue Aff. ¶ 3.) The Officers informed the CCFD Firefighters that there had been an issue between the resident and an unidentified individual regarding the individual running his lawnmower in or around the resident's home. (Bozard Aff. ¶ 3; see also Hogue Aff. ¶ 3.) After

conducting tests, the CCFD Firefighters failed to find the presence of carbon monoxide at the scene. (Hogue Aff. ¶ 5.)

One of CCFD's firefighters subsequently drafted a Field Report ("Report") regarding the incident. (Hogue ¶ 5.) The Comment section of the Report reads as follows: "Dispatched to a possible carbon monoxide alarm. Arrived to find subject running lawn mower in the house. No carbon monoxide detected." (Def. Ex. E.) The plaintiff contends that the allegation that a lawn mower was being operated in the house refers to, and defamed, him.

The plaintiff was arrested by the Defendant Clarendon County Sheriff's Department for First Degree Harassment. CCFD alleges that it has no knowledge of the facts surrounding the plaintiff's arrest.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been

2

raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4thCir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

3

**DISCUSSION**

The Defendant Clarendon County Fire Department has moved for dismissal of the plaintiff's defamation claim against it. As stated, the plaintiff contends that the Field Report, prepared by the CCFD, wrongly accused him of operating a lawnmower indoors and that, such defamation, led to his improper arrest. (Def. Ex. E.) Under South Carolina law, to prevail on a defamation claim, the plaintiff must show that the statement complained of is defamatory and injured the plaintiff in some way. *White v. Wilkerson*, 493 S.E.2d 345 (1997). The elements of defamation include: (1) a false and defamatory statement concerning another, (2) an unprivileged publication to a third party, (3) fault on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Boone v. Sunbelt Newspapers, Inc.*, 556 S.E.2d 732, 736 (S.C. Ct. App. 2001) (citing *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497 (1998)).

The Court concludes that the plaintiff's defamation claim should not continue against CCFD. As an initial matter, to the extent the plaintiff has pled his defamation claim pursuant to 42 U.S.C. § 1983, it fails because an alleged act of defamation of character or injury to reputation is not actionable under that statute. *See Paul v. Davis*, 424 U.S. 693, 697-710 & nn. 3-4 (1976); *Washington v. Tilton*, 2010 WL 2084106, at *2 (D.S.C. May 07, 2010). Civil rights statutes, such as 42 U.S.C. § 1983, do not impose liability for violations of duties of care arising under a state's tort law. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200-203 (1989). Certain language in the plaintiff's Complaint could be interpreted as averring that the defamation alleged produced a constitutional violation, requiring recourse to Section 1983 as against state actors. (See, e.g., Compl. at 9 ("Should law enforcement officers be allowed to violate a citizen constitutional and civil rights in Clarendon County, SC while using defamation along with Clarendon County Fired Department to justify his arrest . . . .").) The Court, however, would

4

assume that the plaintiff meant to plead a state law claim for defamation, exclusively, or in addition to, whatever claim for defamation he might have intended to allege pursuant to Section 1983. He likely had no specific intent either way; it is a nuanced calculation.

Regarding any state law claim for defamation, it is recommended that the statements in the Field Report should be considered as having enjoyed a type qualified privilege. "The elements of a qualified or conditional privilege are 'good faith, an interest to be upheld, a statement limited in its scope to this purpose, or proper occasion, and publication in a proper manner and to proper parties only.'" *Weeks v. Union Camp Corp,* 2000 WL 727771, at *6 (4th Cir. 2000) (citing *Bell v. Evening Post Publ'g Co.*, 459 S.E.2d 315, 317 (S.C. Ct. App. 1995)). It is the court's duty to determine whether the statement is privileged. *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 749 (S.C. Ct. App. 2001) (citing *Swinton Creek Nursery v. Edisto Farm Credit*, 334 S.C. 469, 484-85, 514 S.E.2d 126, 134 (1999)).

The Field Report at issue in this case was prepared by Carl Hogue as part of his job responsibilities with CCFD. (Hogue Aff. ¶ 7.) Hogue swears that he prepared the handwritten report in good faith and limited its contents to the information obtained while on scene. *Id.* ¶ 8. Moreoever, there is evidence that copies of Hogue's handwritten Field Report were limited to CCFD and Sheriff's Department personnel. (Hogue ¶ 10.) To the defendant's showing that it satisfied the elements of the privilege, the plaintiff has made no reply other than to summarily reject that any privilege existed. (Pl. Resp. at 4.) The plaintiff, however, has made no legal or evidentiary argument concerning the privilege nor has he suggested that any such privilege was somehow exceeded.

Moreover, once a qualified privilege is established in the publication, the plaintiff must show that the publishing party acted with "actual malice." *Fulton v. Atl. Coast Line R.R. Co.*, 67 S.E.2d 425, 429 (1951). Actual malice means the defendant acted with ill will, recklessly or wantonly, and with a conscious indifference to the plaintiff's rights. *Murray*, 542 S.E.2d at 750 (citing *Eubanks v. Smith*, 354 S.E.2d 898, 902 (1987)). "Actual malice

5

requires that at the time of the defendant's act or omission [the defendant] was conscious of wrongdoing." *Id.* The plaintiff has certainly not made any accusation or evidentiary proffer that any officers of Defendant CCFD acted, conscious of any wrongdoing. Quite to the contrary, the only evidence of record indicates that the statement concerning the lawnmower being indoors was provided to Hogue by officers of the Defendant Sheriff's Department and that Hogue and other CCFD officers were unaware of the plaintiff's identity until the filing of this lawsuit. (Hogue Aff. ¶ 3; Jones Aff. ¶ 3.) This evidence is undisputed by the plaintiff who has otherwise made no suggestion that the defendant acted with "actual malice."

Amazingly, the Court has not been able to identify any state or federal South Carolina decision involving an allegation that the contents of a police or fire department report defamed a subject thereof. So it is not precisely certain that a qualified privilege should apply. Certainly the facts of the case meet the elements of the state-recognized privilege and the plaintiff has not been able to create any issue of fact otherwise. But, with perfect candor, it seems an open issue whether South Carolina has extended the privilege to this context. As an alternative to a qualified privilege, South Carolina has also recognized a "fair report privilege." *See Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir.1991). The fair report privilege shields persons, typically news organizations, "from defamation claims when publishing information originally based upon government reports or actions." *Id*. (quotation and citations omitted). The privilege is an exception to the "republication rule" which states that "one who repeats a defamatory statement is as liable as the original defamer." *Reuber*, 925 F.2d at 712 (quotation and citation omitted). The fair report privilege, therefore, protects the reporting source if the contents of the governmental record ultimately proves defamatory itself. As stated, South Carolina recognizes the fair report privilege. *See Jones v. Garner*, 158 S.E.2d 909, 913 (1968); *see also White v. Wilkerson*, 493 S.E.2d 345, 348 (S.C.1997). Here, to the extent Defendant CCFD was

republishing the representations of the Defendant Sheriff's Department (and there is no dispute that it was), that republication seems protected, insofar as those initial representations were a type of governmental report, made in the police officers' course of official duty.

Notwithstanding the want of more specific guidance from South Carolina courts, the facts of this case beg for some qualified protection, which South Carolina, as discussed, certainly recognizes in various circumstances. There exist simply no facts that the Defendant CCFD, in the execution of its official duties, had any knowledge of the falsity of the statement in the Report or that it acted with any sort of legally actionable indifference or malice in preparing it.

In not addressing the privilege issue seriously, the plaintiff has all but abdicated the point. The claim, therefore, should be dismissed.

The defendant has also suggested that the statement itself is not in substance defamatory because it is not reasonably associated with the plaintiff and does not otherwise carry any defamatory meaning. The Court could not recommend dismissal on this ground, although the call is somewhat close.

As the plaintiff, himself, has noted, to prevail in a defamation action, he must establish that the defendant's statement referred to some ascertainable person and that the plaintiff was the person to whom the statement referred. *Burns v. Gardner*, 493 S.E.2d 356 (S.C. Ct. App.1997). Surrounding circumstances, however, may reasonably imply the identity of an individual not otherwise immediately ascertainable from the face of the allegedly defamatory statement. *Neeley v. Winn-Dixie Greenville, Inc.*, 178 S.E.2d 662, 665 (1971) (In a defamation action, the challenged statement must "be such that persons reading or hearing it will, in the light of surrounding circumstances, be able to understand that it refers to the person complaining, and it must have been so understood by at least one other person.") (quotation omitted). Such is likely the case here.

7

The only individual identified by name in the report is the plaintiff's tenant, Sharon Counts. (Def. Ex. E.) The document does not even suggest that Counts was merely a lessee, such that there might be some other accountable party. *Id.* Instead, the entirety of the written narrative reads: "Dispatched to a possible carbon monoxide alarm. Arrived to find subject running lawn mower in the house. No carbon monoxide detected." *Id.* The plaintiff is not identified.

Notwithstanding, there can be little dispute that the term "subject" would have reasonably been interpreted to refer to the plaintiff. The parties acknowledge that the plaintiff was eventually arrested for First Degree Harassment. (Pl. Aff. ¶ 8.) The impetus of the whole matter was the renter Counts's allegation that the plaintiff was harassing her with a lawnmower. *Id.* ¶ 3. Accordingly, there was no other "subject" than the plaintiff to be implicated. This is particularly true since the police officers, who provided the information in the first instance, apparently meant to identify the plaintiff. By all accounts, the Field Report was a reflection of that belief. As a result, the Field Report, under all surrounding circumstances, was essentially incapable of any other interpretation than that the plaintiff was the one responsible for the lawnmower.

As to its defamatory meaning, it seems plain that it was, under the circumstances. That the plaintiff would be accused of operating a lawnmower indoors, in light of Counts' allegations, is to imply criminal harassment, which is defamatory if, in fact, false.[1] Questions of fact remain as to the statement's falsity; the defendant does not even attempt contend that it was true.

So, in the absence of any applicable privilege, the undersigned does not see how the claim could be dismissed at this juncture.

---

[1] That is not to say that it is defamatory *per se*, which requires an allegation of a crime of "moral turpitude." *See McBride v. School Dist. of Greenville County*, 698 S.E.2d 845, 852 (S.C. Ct. App. 2010). The court simply means that the statement has defamatory meaning.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 31] be GRANTED as to all claims pending against it.

IT IS SO RECOMMENDED.


                                        s/Bruce H. Hendricks
                                        United States Magistrate Judge

May 31, 2011
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).